UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SEIDA BACIC,

                        Plaintiff,

v.                                                                   Case No. 6:14-CV-1109 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ       PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick Street
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.            JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Seida Bacic ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 15-16.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

**I.     RELEVANT BACKGROUND**

    **A.     Factual Background**

Plaintiff was born on September 14, 1962. She completed the 12th grade of high school. Plaintiff has worked as a sewing machine operator, small products assembler, and assembly supervisor. (T. 28.) Generally, Plaintiff's alleged disability consists of depression, plantar fasciitis, and lumbar spine injuries including spondylosis, lumbar disc herniation, and degenerative disc disease. Plaintiff's alleged disability onset date is January 12, 2009, and her date last insured is December 31, 2014.

    **B.     Procedural History**

On June 18, 2009, Plaintiff applied for Social Security Disability Insurance Benefits. Plaintiff's application was denied on August 12, 2009, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On June 30, 2010, Plaintiff appeared in a video hearing before the ALJ, Edward I. Pitts. (T. 98-127.) On September 9, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 129-145.) On May 8, 2012, the Appeals Council remanded the case for further proceedings. (T. 154-58.)

On January 8, 2013, Plaintiff appeared in a second video hearing before the ALJ. (T. 45-97.) On February 20, 2013, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-44.) On August 26, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.     The ALJ's Decision**

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-44.) First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2014, and had not engaged in substantial gainful activity since January 12, 2009, her alleged onset date. (T. 18.) Second, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine is a severe impairment, but that Plaintiff's plantar fasciitis, generalized body pain, gynecological issues, hypothyroidism, obesity, and depression are not severe impairments. (T. 19-21.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 21.) The ALJ considered Listing 1.04. (*Id.*) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to lift/carry 20 pounds occasionally and 10 pounds frequently, sit for up to 1 hour at a time for a total of 6 hours in an 8 hour workday, stand/walk for 6 hours in an 8 hour workday and can occasionally engage in postural activities. This is consistent with the ability to perform the full range of light work. The claimant can speak basic English at a 5th or 6th grade level, should avoid contact, directly or on the telephone, with the general public due to her language limitation, should not be required to follow instructions written only in English and should not be required to do any writing in English.

(T. 21-22.) Fifth, the ALJ found that Plaintiff is able to perform her past relevant work as a small products assembler. (T. 28.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 29-30.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in evaluating the medical opinions of record. (Dkt. No. 15, at 11-16 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ failed to find Plaintiff's hypothyroidism and depression severe. (*Id.* at 16-19.) Third, and finally, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. (*Id.* at 19-24.)

Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that substantial evidence supports the ALJ's assessments of the medical opinion evidence. (Dkt. No. 16, at 5-12 [Def.'s Mem. of Law].) Second, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's depression and hyperthyroidism were not severe impairments. (*Id.* at 12-15.) Third, and finally, Defendant argues that substantial evidence supports the ALJ's credibility determination. (*Id.* at 15-16.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

> gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.  ANALYSIS

#### A.  Whether the ALJ Erred in Evaluating the Medical Opinion Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 16, at 5-12 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The ALJ must consider every medical opinion of record.  20 C.F.R. §§ 404.1527(c).  Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts.  20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012).  When controlling weight is not given to the opinion of a treating physician, the ALJ should consider the following factors to determine the proper weight for a treating physician's opinion: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the

opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Regulations require an ALJ to set forth his or her reasons for the weight assigned to a treating physician's opinion. *Shaw*, 221 F.3d at 134.

When controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006); *see also Stytzer v. Astrue*, 07-CV-0811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency]."); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (finding that, because the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *see also Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")

1.      **Treating Orthopedic Surgeon, Dr. Gregory B. Shankman, M.D.[1]**

Treating orthopedic surgeon, Dr. Shankman, diagnosed Plaintiff with herniated disc of the lumbar spine at L4-5, and mild degenerative disc disease of the lumbar spine. (T. 1194.) On February 24, 2010, Dr. Shankman opined that Plaintiff could sit and stand/walk zero hours, lift/carry zero pounds, never perform manipulative functions, and never perform postural activities during an eight-hour workday. (T. 714-15.)

On February 8, 2012, and June 8, 2012, Dr. Shankman opined that Plaintiff's impairments are likely to produce "good days" and "bad days," and that Plaintiff's pain and other symptoms are likely to be incapacitating and cause Plaintiff to be off-task at least 50 percent of the time during an eight-hour workday. (T. 1194, 1335.) On June 8, 2012, Dr. Shankman opined that Plaintiff could stand/walk for one hour, could sit for two hours, and needed to lie down intermittently during an eight-hour workday. (T. 1336.) Dr. Shankman opined that Plaintiff could frequently lift and carry ten pounds, had mild limitation reaching, and could never perform postural activities. (T. 1336-37.) Additionally, multiple treatment notes from Dr. Shankman and his physician assistant, Mr. Lynch, opined that Plaintiff was "totally disabled." (T. 25.)

The ALJ afforded little to no weight to the opinions of Dr. Shankman, reasoning that Dr. Shankman personally examined Plaintiff on only two occasions, at the intake exam on March 27, 2009, and on October 9, 2009. (T. 25.) The ALJ further reasoned that the extreme limitations opined by Dr. Shankman were unsupported by physical findings in the treatment records and were inconsistent with the record evidence as a whole, including Plaintiff's reported abilities and medical opinions from other treating and examining sources. (T. 26-28.)

---

[1] The opinions of record provided by Dr. Shankman are cosigned by Physician Assistant, Kevin Lynch, P.A.

8

## 2.     Treating Pain Clinic Physician, Dr. Muthu Ramasamy, M.D.

On July 3, 2012, treating pain clinic physician, Dr. Ramasamy, assessed Plaintiff with degenerative disc disease and opined that Plaintiff could stand/walk for two hours, sit for two hours, and frequently lift/carry ten pounds during an eight-hour workday. (T. 1340-41.) Dr. Ramasamy opined that Plaintiff would be off task for more than 50 percent of an eight-hour workday, and would likely miss more than four workdays per month due to her symptoms. (*Id.*) For purposes of Workers' Compensation, Dr. Ramasamy and Physician Assistant, Maynard Shumway, R.P.A., indicated that Plaintiff had a temporary total disability. (T. 27.)

The ALJ afforded no weight to Dr. Ramasamy's opinions because the degree of limitations was unsupported by clinical findings in the examination notes and was inconsistent with the record as a whole. (T. 27.) Elsewhere in the decision, the ALJ reasoned that there was no basis in the medical record to support Dr. Ramasamy's opinion that Plaintiff would be off task for large portions of the day due to pain or the effects of pain medication, or could not attend work on a regular basis. (T. 24.) Additionally, the ALJ reasoned that the Worker's Compensation rating "has little specific meaning within the context of this Social Security disability proceeding . . . and the rating is by its own terms 'temporary' and so does not clearly satisfy Social Security standards." (T. 27.)

The ALJ cited medical evidence that was inconsistent with the opinions of Dr. Shankman and Dr. Ramasamy, including other treating and examining medical opinions that Plaintiff could perform at least sedentary work. (T. 22-28.) For example, the ALJ noted that an April 6, 2009, treatment note from treating pain clinic physician, Nathaniel Gould, M.D., opined that Plaintiff could perform "sedentary work most likely." (T. 27.) The ALJ noted that, on December 20, 2010, State agency orthopedic consultant, Dr. J. Dale, M.D., opined that Plaintiff could perform

9

the full range of light work.  (T. 28.)  The ALJ noted that, on April 5, 2011, examining orthopedic physician, Dr. Richard Saunders, M.D., evaluated Plaintiff for Workers' Compensation purposes and opined that Plaintiff could return to work at the light exertional level with postural limitations.  (T. 27-28.)  The ALJ further noted that Dr. Saunders observed that there was "no clinically significant dysfunction present that is plausibly related to the mechanism of injury described."  (T. 27.)  The Court notes that Dr. Saunders observed that Plaintiff got on and off the exam table without difficulty, had negative straight leg raises bilaterally, and had no palpable spasm.  (T. 1364.)

     The Court finds that the ALJ properly weighed the opinions of Dr. Shankman and Dr. Ramasamy.  First, the ALJ properly assessed the statements from Dr. Shankman's office that Plaintiff was totally disabled and the statement from Dr. Ramasamy that Plaintiff was temporarily totally disabled.  (T. 25, 27.)  A physician's statement that a plaintiff is disabled is a statement on an issue reserved for the Commissioner and is never entitled to controlling weight or special significance.  20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

     Second, the ALJ properly applied the regulations in evaluating the opinions of Dr. Shankman and Dr. Ramasamy.  As discussed above, the ALJ considered each physician's area of practice, examination notes, treating or examining relationship with Plaintiff, and cited inconsistencies between each physician's opinion and other medical evidence in the record pursuant to 20 C.F.R. § 404.1527(c).  (T. 19-28.)  Where, as here, an ALJ's reasoning and adherence to the Regulations are clear, the ALJ is not required to review explicitly each and every factor of the Regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding

10

that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the ALJ did not err in assessing the opinions of Dr. Shankman and Dr. Ramasamy. Accordingly, remand is not necessary on this basis.

### B. Whether the ALJ Erred in Finding that Plaintiff's Depression and Hyperthyroidism Were Nonsevere Impairments

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 12-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and ususal work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

The regulations set forth additional requirements for evaluating the severity of mental impairments. 20 C.F.R. § 404.1520a. The regulations require application of a "special technique" at the second and third steps of the five-step analysis, and at each level of administrative review. 20 C.F.R. § 404.1520a(a); *see also Kohler v. Astrue,* 546 F.3d 260 (2d Cir. 2010). First, the technique requires the ALJ to determine whether a plaintiff has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). Second, the ALJ must rate the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2). The four broad functional areas are as follows: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

When "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

12

### 1. Depression

The ALJ noted that Plaintiff complained of depression and reported symptoms including tearfulness, difficulty concentrating, and not wanting to talk to anyone. (T. 20.) On November 16, 2010, Plaintiff underwent a consultative psychiatric examination with Dr. Jeanne A. Shapiro, Ph.D. (T. 20.) The ALJ noted that, although Dr. Shapiro observed that Plaintiff appeared depressed, her mental status examination was "fairly benign." (T. 20.) Specifically, the ALJ noted that Dr. Shapiro observed that (1) Plaintiff was fully oriented, (2) Plaintiff had no problems with language or thought, (3) Plaintiff's affect was full range, and (4) Plaintiff's attention/concentration and recent/remote memory skills were intact. (T. 25.) Additionally, the ALJ noted that Plaintiff has never been hospitalized for psychiatric reasons and there was no record evidence that Plaintiff received any mental health treatment since she was treated by Dr. Firooz Tabrizzi, M.D., in 2010.

The ALJ's determination that Plaintiff's depression was not severe is further supported by the psychiatric review technique performed by State agency psychologist, Dr. T. Andrews. (T. 1017- 30.) On December 16, 2010, Dr. Andrews reviewed Plaintiff's medical records and assessed Plaintiff with an affective disorder that was not severe. (T. 1017, 1020.) Dr. Andrews opined that Plaintiff had (1) no limitation in activities of daily living, (2) no limitation in maintaining social functioning, (3) mild limitation in maintaining concentration, persistence or pace, and (4) no repeated episodes of deterioration of extended duration. (T. 1027.)

The ALJ assessed and rated Plaintiff's limitations in each of the four functional areas set forth in 20 C.F.R. §§ 404.1520a(c)(4). (T. 21.) Specifically, the ALJ determined that Plaintiff had (1) mild limitations in activities of daily living, (2) no limitations in social functioning, (3) mild limitations in concentration, persistence, or pace, and (4) no episodes of decompensation of

extended duration. (T. 21.) "According the to the regulations, if the degree of limitation in each of the first three [functional] areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Kohler v. Astrue,* 546 F.3d 260, 266 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a[d][1]). Therefore, the ALJ's mental RFC determination is supported by substantial evidence.

### 2. Hypothyroidism

Regarding Plaintiff's hypothyroid condition, the ALJ noted that Plaintiff takes a thyroid replacement, has her thyroid stimulating hormone (THS) levels checked several times a year, and is clinically stable. (T. 20.) The ALJ reasoned that there are no limitations associated with this impairment, and therefore Plaintiff's condition is not severe within the meaning of the regulations. (*Id.*) As stated above, the severity of an impairment is determined by the functional limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis*, 2012 WL 5464632, at *4 (citing *Coleman,* 895 F. Supp at 53).

Further, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine is a severe impairment, and therefore the ALJ did not deny benefits based on lack of a severe impairment. (T. 19.) Additionally, the ALJ properly considered the effects of Plaintiff's combined impairments in the remainder of his analysis. (T. 21-28.) Accordingly, even if the ALJ's failure to find additional impairments severe at step two of the sequential analysis is error, it is harmless. *Ellis*, 2012 WL 5464632, at *5; *Tyron,* 2012 WL 398952, at *3. Therefore, remand is not necessary on this basis.

### C.     Whether the ALJ Erred in Evaluating Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 15-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

15

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the intensity, persistence and limiting effects of her symptoms are not fully credible. (T. 22.) The ALJ determined that Plaintiff's allegations of great pain in all parts of her body are not supported by clinical findings from treating or examining sources, and that Plaintiff's allegation of a complete inability to perform any work activities is not consistent with the record as a whole. (T. 22-24.)

First, the ALJ noted that, although Plaintiff alleged that she could sit for only 15 minutes at a time, she sat with only minimal discomfort for one hour and 45 minutes during the second hearing. (T. 22-23.)

Second, the ALJ found that Plaintiff's treatment record does not support Plaintiff's allegation of full body pain, including ten out of ten level pain on a daily basis. (*Id.*) For example, the ALJ noted that, although Plaintiff alleges having pain throughout her body, her medical treatment has been focused on her low back and she does not consistently report other complaints to her medical providers. (*Id.*) The ALJ noted that Plaintiff has generally not been consistent with her treatment, especially with physical therapy and follow-up on medical recommendations, has undergone only conservative treatment and rejected more aggressive medical care despite alleging that her condition is getting worse. (T. 22 .) The ALJ discussed Plaintiff's medication and treatment for relief of her symptoms. (T. 24.) For example, the ALJ

16

noted that Plaintiff's medications included Celebrex, Levothyroxine and Tramadol, that there are no documented side effects to these medications, and that Plaintiff had a good response to some of the lumbar spine and foot injections. (*Id.*)

Third, the ALJ cited evidence from examining the treating sources suggesting that Plaintiff had exaggerated her symptoms. (T. 22-23.) For example, the ALJ noted that treating pain clinic physician, Dr. Gould, noted that Plaintiff's presentation was "overexaggerated." (T. 23.) The ALJ further noted that, on July 30, 2012, examining physician, Dr. Daniel Carr, M.D., observed that Plaintiff was "very expressive about her pain," yet observed that Plaintiff was "quite comfortable" at other times. (T. 22.) The ALJ noted that Dr. Carr observed that Plaintiff had "'nonspecific diffuse complaints that do not follow any orthopedic or anatomic pattern'" and that the MRI he reviewed showed only age related degenerative changes. (T. 23.)

Fourth, the ALJ found that Plaintiff's allegations of great pain throughout her body are inconsistent with her ability to perform a wide range of activities of daily living. (*Id.*) For example, the ALJ noted that, on November 16, 2010, Dr. Shapiro observed that Plaintiff indicated that she cared for her personal needs without assistance, cooked and prepared simple food, cleaned, did laundry, shopped, managed money, drove a car, and took public transportation. (*Id.*) The ALJ further noted that, on April 5, 2011, Dr. Saunders observed that Plaintiff reported that she cooked and prepared meals for her family and did laundry. (*Id.*)

Fifth, the ALJ noted evidence that is contrary to Plaintiff's testimony that she is not looking for work because she is totally disabled. (T. 23.) For example, the ALJ noted that Plaintiff reported to Dr. Shapiro at the November 16, 2010, hearing that she "thinks she is able to work at the present time and has been looking for work." (*Id.*) Additionally, the ALJ noted that the Workers' Compensation board indicated that Plaintiff produced evidence that she was

17

seeking work within her limitations.  (*Id.*)  The ALJ noted that Plaintiff's good work record before 2009 enhances her credibility regarding motivation to work, but found that her lack of effort to rehabilitate herself detracts from her credibility.  (T. 24.)

Finally, the ALJ noted evidence that was inconsistent with Plaintiff's allegations of not being literate in English.  (T. 23.)  For example, the ALJ noted that Plaintiff (1) attended medical appointments without anyone to translate for her, (2) completed an activities of daily living questionnaire in English that evidenced her functional level of proficiency in reading and writing in English, and (3) Plaintiff often answered questions posed in English before they were translated into Bosnian during the hearings.  (T. 24.)

For these reasons, the ALJ appropriately evaluated Plaintiff's credibility, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January19, 2016
       Syracuse, New York

                                        _____
                                        Hon. Glenn T. Suddaby
                                        Chief U.S. District Judge